**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WILLIAM KELLER HORLOCK, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>BETTER HOME & FINANCE HOLDING COMPANY, VISHAL GARG, and LOVEEN ADVANI,<br><br>Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff William Keller Horlock ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, except as to allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief are based upon, among other things, his counsel's investigation, which includes, without limitation: (a) review and analysis of public filings made by Better Home & Finance Holding Company ("Better Home" or the "Company") with the U.S. Securities and Exchange Commission (the "SEC"); (b) review and analysis of press releases and other publications disseminated by Defendants (defined below) and other parties; (c) review of news articles, shareholder communications, conference calls, and postings on Better Home's website concerning the Company's public statements; and (d) review of other publicly available information concerning the Company and the Individual Defendants.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of all persons or entities who purchased or otherwise acquired Better Home common stock between March 13, 2026 and August 6, 2026, inclusive (the "Class Period") against Better Home and certain of its officers (collectively, "Defendants") seeking to pursue remedies under the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq*. (the "Exchange Act").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 27 of the Exchange Act (15 U.S.C. § 78aa).

4. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b), Section 27 of the Exchange Act (15 U.S.C. § 78aa). Substantial acts in furtherance of the alleged fraud

or the effects of the fraud have occurred in this Judicial District. Many of the acts and omissions charged herein, including the dissemination of materially false and misleading information to the investing public, and the omission of material information, occurred in substantial part in this Judicial District, as Better Home is headquartered in this District.

5. In connection with the acts, transactions, and conduct alleged herein, Defendants, directly and indirectly, used the means and instrumentalities of interstate commerce, including the U.S. Mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

6. Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Better Home common stock during the Class Period, and suffered damages as a result of the violations of the federal securities laws and false and/or misleading statements and/or material omissions alleged herein.

7. Defendant Better Home is incorporated under the laws of Delaware, with its principal executive offices located in New York, New York. Better Home's common stock trades on the Nasdaq Capital Market (the "NASDAQ") under the ticker symbol "BETR."

8. Defendant Vishal Garg ("Garg") is the founder of Better Home and served as its Chief Executive Officer ("CEO") until August 3, 2026.

9. Defendant Loveen Advani ("Advani") has served as Better Home's Chief Financial Officer ("CFO") since February 2, 2026.

10. Defendants Garg and Advani (together, the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases, presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading

prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations that were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein.

11. The Company and the Individual Defendants are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Company Background

12. Better Home is a technology-enabled homeownership company that offers mortgage, home equity, and other homeownership products through a digital platform. The Company offers residential mortgage loan products for home purchases and refinancings, as well as home equity loans and lines of credit. Better Home's proprietary Tinman AI Platform ("Tinman") supports mortgage origination activities, including technology-enabled underwriting, loan processing, compliance support, and related back-office functionality.

13. Better Home reaches customers through two primary distribution channels: direct-to-consumer ("D2C") and its platform channel. Through its D2C channel, customers engage directly with the Company, while its platform channel includes partnerships with third parties and in-market loan originations. In certain partnership arrangements, third parties use Tinman to support their existing mortgage operations or establish new mortgage origination capabilities. In other arrangements, Better Home originates mortgage loans directly for its strategic partners' customers. During 2025, Better Home expanded its platform partnerships as part of its efforts to broaden distribution beyond its traditional D2C business.

**Defendants' Materially False and Misleading Statements**
**<u>Issued During the Class Period</u>**

14. The Class Period begins on March 13, 2026, when, before the markets opened, Better Home issued a press release announcing its financial results for the fourth quarter of 2025 ("Q4 2025"). The Q4 2025 press release quoted Garg as stating, in relevant part:

> The fourth quarter was about positioning the Company for ***a material ramp in Funded Loan Volume. The early data speaks for itself*** as we transition from a D2C originator to an AI-native lending platform with rapidly expanding distribution. ***With the Tinman AI platform and several landmark partnerships scaling***, we believe we are defining the next frontier in home finance.

15. The Q4 2025 press release also reaffirmed the Company's guidance of "***$1.0 billion in Monthly Loan Volume by the end of May 2026*** assuming continued Tinman AI Platform partnership growth," and "***Adjusted EBITDA breakeven by the end of Q3 2026***."

16. On the accompanying earnings conference call that same morning, Garg discussed the Company's progress in expanding its partnerships, stating, in relevant part:

> These are large complex partnerships with longer sales and setup cycles than anything we manage in our D2C business, and growing them is not something we do alone. It requires deep collaboration with our partners at every step from integration and onboarding to conversion, optimization and product expansion. The pace of ramp is a shared journey, and we are working hand-in-hand with each of our partners to get things scaling. ***The progress we are seeing is real. The early data is highly encouraging, and we are more excited than ever about what lies ahead***.

17. During the same call, Advani similarly emphasized the Company's partnership growth, stating:

> Enterprise partnerships of this scale carry longer ramp time lines, but they also carry a far greater volume potential and a far better marginal economics than our legacy D2C model. What gives me confidence is that ***the financial trajectory is already beginning to reflect this shift. Our platform partnerships are growing rapidly and contributing an increasingly meaningful share of our overall business***.

18. Advani also stated: "We continue to streamline overhead while ***ensuring sufficient resources to support new partnerships***." Advani further tied the Company's financial guidance to the performance of its existing partnerships, stating:

> ***Based on how our partners are ramping, we continue to believe that we will reach a $1 billion total monthly loan volume by May 2026. We expect to achieve adjusted EBITDA breakeven by the end of Q3 2026.*** This will be driven by volume growth across both our Tinman AI platform and direct-to-consumer channels, per loan contribution margin improvement, pricing gains and corporate cost reductions.

19. When asked about the basis for the Company's adjusted EBITDA breakeven guidance, Garg also stated that it "***is based on us achieving the penetration rates on the partners we have signed up***."

20. On April 8, 2026, Better Home issued a press release announcing its preliminary financial results for the first quarter of 2026 ("Q1 2026"). The press release stated that the Company had "***clear line of sight to its target of Adjusted EBITDA breakeven by the end of Q3 2026 as Tinman AI Platform volume expands and grows as a percentage of Loan Volume***."

21. The statements referenced in ¶¶ 14–20 were materially false and/or misleading when made because they failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose that: (i) the Company's enterprise partnerships were experiencing significant execution and integration problems; (ii) the Company lacked sufficient infrastructure to effectively implement and support its enterprise partnerships; (iii) costly enterprise integrations were not yielding material results; and (iv) as a result, Defendants lacked a reasonable basis for their positive statements concerning the growth and performance of the Company's partnerships and its ability to achieve $1 billion in monthly loan volume by May 2026 and Adjusted EBITDA breakeven by the end of Q3 2026.

## The Truth Begins to Emerge

22. On May 7, 2026, before the markets opened, Better Home issued a press release announcing its Q1 2026 financial results. The Company provided second quarter loan volume guidance of $1.575 billion to $1.725 billion, while ***reaffirming its guidance of Adjusted EBITDA breakeven by the end of Q3 2026***.

23. On the accompanying earnings conference call that same morning, Garg acknowledged that the Company was experiencing declining conversion rates, stating: "So the bad news is that conversion rates are down from where they were in Q1 due to macro factors." Garg further acknowledged that the Company's previously announced $1 billion monthly funded loan volume target would likely be delayed, stating:

> The timing on when we achieve our $1 billion monthly funded volume target will depend in part on the rate environment. It looked highly doable this time last month. And right now, sitting for this month, it looks like it's going to be deferred.

24. On this news, Better Home's stock price fell $12.17 per share, or 28.5%, from a closing price of $42.69 on May 6, 2026, to a closing price of $30.52 on May 7, 2026.

25. Despite acknowledging these difficulties, Garg continued to make positive statements concerning the Company's Tinman platform partnerships. During the same earnings call, Garg stated that "***partner volume continues to increase dramatically*** as the partner opens us up to a broader section of their customer base and products." Garg further stated:

> Turning to partnerships. ***Our Credit Karma, Finance of America, and top five non-bank originator partnerships are all live and ramping.*** These partnerships are especially important because they leverage existing customer ecosystems rather than paid acquisition channels.

26. When asked about the performance of the Company's newer partnerships, Garg stated:

> ***The newest partnership are ramping extremely well***. I mean we literally ***in the month of April, went from $100 million a day top of funnel to $200 million a day top of funnel***. $200 million a day top of funnel just multiplied by 250 business days is $50 billion of pre-approval volume…. And we're still just scratching the surface.

27. Moreover, despite the disclosed delay in reaching the Company's monthly loan volume target, Better Home continued to reaffirm its guidance of achieving Adjusted EBITDA breakeven by the end of Q3 2026. When asked whether higher interest rates or a prolonged conflict in the Middle East could prevent the Company from achieving this target, Garg responded: "We're going to have to cut costs deeper. ***I think we're pretty committed to that number***." Garg subsequently reiterated that the Company was "***confirming again that we will achieve by the end of Q3 2026.***"

28. The statements referenced in ¶¶ 25–27 were materially false and/or misleading when made because they failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose that: (i) the Company's enterprise partnerships were experiencing significant execution and integration problems; (ii) the Company lacked sufficient infrastructure to effectively implement and support its enterprise partnerships; (iii) costly enterprise integrations were not yielding material results; and (iv) as a result, Defendants lacked a reasonable basis for their positive statements concerning the growth and performance of the Company's partnerships and its ability to achieve Adjusted EBITDA breakeven by the end of Q3 2026.

## The Truth Continues to Emerge

29. On August 3, 2026, after the markets closed, Better Home issued a press release announcing that its Board of Directors had appointed Daniel Lewis ("Lewis") as Interim CEO, replacing Garg, who had "mutually agreed with the Board to transition from his role as Chief Executive Officer."

30. The press release further disclosed that Lewis had worked closely with the Board and management over the preceding several months on "cost reductions, enterprise partnerships, strategic planning, and operational initiatives." Lewis also announced that the Company expected annualized cost reductions to exceed $45 million by year-end, substantially above its previously announced $25 million target.

31. On this news, Better Home's stock price fell $10.03 per share, or nearly 37%, from a closing price of $27.30 on August 3, 2026, to a closing price of $17.27 on August 4, 2026.

32. Then, on August 6, 2026, after the markets closed, Better Home issued a press release announcing its financial results for the second quarter of 2026 ("Q2 2026"). On the Q2 2026 earnings conference call that same day, Lewis disclosed that the Company was experiencing delays in launching its enterprise partnerships and would no longer achieve its previously reaffirmed Q3 2026 Adjusted EBITDA breakeven target, stating:

> Our third quarter guidance reflects the muted refinancing environment and the ***uncertain timing of several partnership launches***. In Q3, we expect loan volume of $1.375 billion to $1.525 billion, total net revenues of $49 million to $52 million, and an adjusted EBITDA loss of $18 million to $15 million. Regarding our previously guided goal of reaching adjusted EBITDA break-even by September, ***we now expect to fall short***.

33. Lewis further acknowledged problems with the Company's enterprise partnership strategy, stating:

> Our growth will come from better execution, not from waiting for the market to improve. I know our enterprise results can improve significantly. ***Our partnership support infrastructure still requires work***, which reflects our direct-to-consumer heritage. The expansion from direct-to-consumer to an enterprise model is not a simple evolution.

34. Lewis also discussed the Company's costly enterprise integrations and their limited results, stating:

> When you're thinking about ripping out existing systems and training other people's loan officers on the use of Tinman, those are very long sales cycles. They're very expensive in terms of customer support…. So there's a wide market that covers most of the TAM of the industry, particularly in HELOC, but it's the really ***complicated enterprise integrations that we think so far have not yielded material results and the costs associated with them has been high***.

35. On this news, Better Home's stock price fell $1.18 per share, or 7.1%, from a closing price of $16.64 on August 6, 2026, to a closing price of $15.46 on August 7, 2026.

**Subsequent Disclosures**

36. On August 14, 2026, before the markets opened, Better Home issued a press release clarifying that Garg had been terminated as CEO following a unanimous vote by the Company's Board of Directors (the "Board"), excluding Garg, due to concerns regarding his "judgment, temperament and credibility."

37. Then, on August 31, 2026, the Special Committee of Better Home's Board issued an investor presentation addressing the Company's partnership strategy under Garg. The presentation stated that the Company's "***partnership execution lacked commercial discipline, standardization and accountability***," and disclosed that, over the prior two years, two partnerships had generated less than $30,000 in combined revenue, while another two had produced no funded loans, despite meaningful investments in technology and personnel. The presentation further stated that "the opportunity in housing finance is not the problem; ***our execution under Mr. Garg's leadership consistently fell short***." The presentation also compared Garg's prior statements regarding partnership growth and the $1 billion monthly loan volume target with the Company's actual average monthly loan volume of $556 million in Q2 2026, a 44% shortfall.

**CLASS ACTION ALLEGATIONS**

38. Plaintiff brings this action as a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class, consisting of all persons and entities who

purchased or otherwise acquired Better Home common stock between March 13, 2026 and August 6, 2026, inclusive, and who were damaged thereby (the “Class”). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

39. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. Throughout the Class Period, Better Home common stock actively traded on NASDAQ (an open and efficient market) under the symbol “BETR.” Millions of Better Home shares were traded publicly during the Class Period on the NASDAQ. Record owners and other members of the Class may be identified from records maintained by Better Home or its transfer agent and may be notified of the pendency of this action by mail, using a form of notice similar to that customarily used in securities class actions.

40. Plaintiff’s claims are typical of the claims of the other members of the Class as all members of the Class were similarly affected by Defendants’ wrongful conduct in violation of federal law that is complained of herein.

41. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests that conflict with those of the Class.

42. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

a. whether Defendants violated the Exchange Act by the acts and omissions as alleged herein;

b. whether Defendants knew or recklessly disregarded that their statements and/or omissions were false and misleading;

c. whether documents, press releases, and other statements disseminated to the investing public and the Company's shareholders during the Class Period misrepresented material facts about the business, operations, and prospects of Better Home;

d. whether statements made by Defendants to the investing public during the Class Period misrepresented and/or omitted to disclose material facts about the business, operations, and prospects of Better Home;

e. whether the market price of Better Home common stock during the Class Period was artificially inflated due to the material misrepresentations and failures to correct the material misrepresentations complained of herein; and

f. the extent to which the members of the Class have sustained damages and the proper measure of damages.

43. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this suit as a class action.

**UNDISCLOSED ADVERSE INFORMATION**

44. The market for Better Home's common stock was an open, well-developed, and efficient market at all relevant times. As a result of the materially false and/or misleading statements and/or omissions particularized in this Complaint, Better Home common stock traded

at artificially inflated prices during the Class Period. Plaintiff and the other members of the Class purchased Better Home common stock relying upon the integrity of the market price of the Company's common stock and market information relating to Better Home and have been damaged thereby.

45. During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Better Home common stock, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Better Home's business, operations, and prospects as alleged herein. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its business, thus causing the Company's common stock to be overvalued and artificially inflated or maintained at all relevant times. Defendants' materially false and/or misleading statements during the Class Period directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class who purchased the Company's common stock at artificially inflated prices and were harmed when the truth was revealed.

## SCIENTER ALLEGATIONS

46. As alleged herein, Defendants acted with scienter in that Defendants knew or were reckless as to whether the public documents and statements issued or disseminated in the name of the Company during the Class Period were materially false and misleading; knew or were reckless as to whether such statements or documents would be issued or disseminated to the investing public, and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.

47. As set forth herein, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Better Home, their control over, receipt, and/or modification of Better Home's allegedly materially misleading statements and omissions, and/or their positions with the Company that made them privy to confidential information concerning Better Home, participated in the fraudulent scheme alleged herein.

## INAPPLICABILITY OF STATUTORY SAFE HARBOR

48. The federal statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein include statements relating to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward-looking, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

49. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Better Home who knew that the statement was false when made.

## LOSS CAUSATION

50. Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss, *i.e.*, damages, suffered by Plaintiff and the Class.

51. During the Class Period, as detailed herein, Defendants made materially false and misleading statements and omissions and engaged in a scheme to deceive the market. This

artificially inflated the prices of Better Home common stock and operated as a fraud or deceit on the Class. When Defendants' prior misrepresentations, information alleged to have been concealed, fraudulent conduct, and/or the effect thereof were disclosed to the market, the price of Better Home's stock fell precipitously, as the prior artificial inflation came out of the price.

## APPLICABILITY OF PRESUMPTION OF RELIANCE (FRAUD-ON-THE-MARKET DOCTRINE)

52. The market for Better Home common stock was open, well-developed, and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose particularized in this Complaint, Better Home common stock traded at artificially inflated and/or maintained prices during the Class Period. Plaintiff and other members of the Class purchased the Company's common stock relying upon the integrity of the market price of Better Home common stock and market information relating to Better Home and have been damaged thereby.

53. At all times relevant, the market for Better Home common stock was an efficient market for the following reasons, among others:

a. Better Home was listed and actively traded on NASDAQ, a highly efficient and automated market;

b. As a regulated issuer, Better Home filed periodic public reports with the SEC and/or the NASDAQ;

c. Better Home regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

d. Better Home was followed by common stock analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

54. As a result of the foregoing, the market for Better Home common stock promptly digested current information regarding Better Home from all publicly available sources and reflected such information in Better Home's stock price. Under these circumstances, all purchasers of Better Home stock during the Class Period suffered similar injury through their purchase of stock at artificially inflated prices, and a presumption of reliance applies.

55. A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded in Defendants' material misstatements and/or omissions. Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business, operations, and prospects—information that Defendants were obligated to disclose during the Class Period but did not—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## COUNTS AGAINST DEFENDANTS

## COUNT I

### For violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants

56. Plaintiff repeats and realleges each and every allegation contained above as if fully

set forth herein.

57. During the Class Period, Defendants carried out a plan, scheme, and course of conduct that was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Better Home common stock; and (iii) cause Plaintiff and other members of the Class to purchase Better Home common stock at artificially inflated prices. In furtherance of this unlawful scheme, plan, and course of conduct, Defendants, and each of them, took the actions set forth herein.

58. Defendants: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of conduct that operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for Better Home common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

59. Defendants, individually and in concert, directly and indirectly, by the use, means, or instrumentalities of interstate commerce and/or the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Better Home's business, operations, and prospects, as specified herein. Defendants employed devices, schemes, and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Better Home's business, operations, and prospects, which included the making of, or the

participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Better Home and its business, operations, and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices, and a course of conduct of business that operated as a fraud and deceit upon the purchasers of the Company's common stock during the Class Period.

60. Each of the Individual Defendants' primary liability and controlling-person liability arises from the following facts: (i) each of the Individual Defendants was a high-level executive and/or director at the Company during the Class Period and a member of the Company's management team or had control thereof; (ii) each of the Individual Defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development, and reporting of the Company's business, operations, and prospects; (iii) each of the Individual Defendants enjoyed significant personal contact and familiarity with the other Defendants and was advised of and had access to other members of the Company's management team, internal reports, and other data and information about the Company's financial condition and performance at all relevant times; and (iv) each of the Individual Defendants was aware of the Company's dissemination of information to the investing public, which they knew and/or recklessly disregarded was materially false and misleading.

61. Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Better Home's operating condition, business practices,

and prospects from the investing public and supporting the artificially inflated and/or maintained price of its common stock. As demonstrated by Defendants' overstatements and misstatements of the Company's business, operations, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

62. As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Better Home common stock was artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants or upon the integrity of the market in which the stock trades, and/or in the absence of material adverse information that was known or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class purchased Better Home common stock during the Class Period at artificially inflated prices and were damaged thereby.

63. At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known of the truth regarding the problems that Better Home was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased their Better Home common stock, or, if they had purchased such common stock during the Class Period, they would not have done so at the artificially inflated prices that they paid.

64. By virtue of the foregoing, Better Home and the Individual Defendants each violated § 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

65. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

## COUNT II

### For Violations of Section 20(a) of the Exchange Act Against the Individual Defendants

66. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

67. The Individual Defendants acted as controlling persons of Better Home within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions with the Company, participation in, and/or awareness of the Company's operations, and intimate knowledge of the false statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading. Each of the Individual Defendants was provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

68. In particular, the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

69. As set forth above, Better Home and the Individual Defendants each violated

§ 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, the Individual Defendants are liable pursuant to § 20(a) of the Exchange Act. As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

## PRAYER FOR RELIEF

70. WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for relief and judgment as follows:

a) Declaring this action to be a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the Class defined herein;

b) Awarding Plaintiff and the other members of the Class damages in an amount that may be proven at trial, together with interest thereon;

c) Awarding Plaintiff and the members of the Class pre-judgment and post-judgment interest, as well as their reasonable attorneys' and expert witness fees and other costs; and

d) Awarding such other relief as this Court deems appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: November 6, 2026

Respectfully submitted,

**JOHNSON FISTEL, PLLP**

/s/ *Scott M. Koren*
Scott M. Koren

620 Fifth Avenue, 2nd Floor
New York, NY 10020

Telephone: (212) 292-5690
Facsimile: (619) 363-8326
E-mail: ScottK@johnsonfistel.com

**JOHNSON FISTEL, PLLP**
Michael I. Fistel, Jr.
40 Powder Springs Street
Marietta, GA 30064
Telephone: (470) 632-6000
Facsimile: (619) 363-8326
E-mail: MichaelF@johnsonfistel.com

*Counsel for Plaintiff*

## CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

I, William Keller Horlock ("Plaintiff"), declare the following as to the claims asserted, or to be asserted, under the federal securities laws:

1. Plaintiff has reviewed the complaint and authorized its filing.

2. Plaintiff did not acquire the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3. Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4. Plaintiff has made the following transactions during the class period in the securities that are the subject of this action. *See* Schedule A.

5. Plaintiff has not sought to serve or served as a representative party in any class action under the federal securities laws within the three-year period prior to the date of this certification.

6. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's *pro rata* share of any recovery, except such reasonable costs and expenses (including lost wages), directly relating to the representation of the class, as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 4___ day of November, 2026.

DocuSigned by:
FE62BA728DCC476...
William Keller Horlock

## SCHEDULE A

William Keller Horlock
Better Home & Finance Holding Company (BETR) Class Period Transactions
Class Period: March 13, 2026 through August 6, 2026

| Date | Buy/Sell | # of Shares | Price/Share* |
|---|---|---|---|
| 4/10/2026 | Buy | 2 | $33.1000 |
| 4/10/2026 | Buy | 0.114803 | $33.1000 |
| 4/10/2026 | Buy | 249 | $33.1000 |
| 4/10/2026 | Buy | 51 | $33.1000 |
| 4/28/2026 | Buy | 0.213944 | $42.9654 |
| 4/28/2026 | Buy | 1 | $43.0200 |
| 4/28/2026 | Buy | 178 | $42.9651 |
| 4/29/2026 | Buy | 51 | $38.8594 |
| 4/29/2026 | Buy | 0.467598 | $38.8594 |
| 4/29/2026 | Buy | 166 | $38.7600 |
| 4/29/2026 | Buy | 2 | $38.6150 |
| 5/5/2026 | Buy | 5547 | $41.4300 |
| 5/5/2026 | Buy | 153 | $41.4300 |
| 5/5/2026 | Buy | 5300 | $41.4300 |
| 8/6/2026 | Sell | 100 | $16.4500 |
| 8/6/2026 | Sell | 100 | $16.4700 |
| 8/6/2026 | Sell | 100 | $16.4700 |
| 8/6/2026 | Sell | 624 | $16.4500 |
| 8/6/2026 | Sell | 100 | $16.4500 |
| 8/6/2026 | Sell | 30 | $16.5050 |
| 8/6/2026 | Sell | 60 | $16.4700 |
| 8/6/2026 | Sell | 19 | $16.4500 |
| 8/6/2026 | Sell | 100 | $16.4700 |
| 8/6/2026 | Sell | 100 | $16.4700 |
| 8/6/2026 | Sell | 667 | $16.4300 |

* Prices are rounded to four decimal places.